## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 19-** |
| **v.** | : | **DATE FILED:** |
| **RICHARD IRA MINTZ** | : | **VIOLATIONS:** |
| | | **21 U.S.C. § 841(a)(1), (b)(1)(C) (distribution** |
| | : | **and dispensing of controlled substance – 8** |
| | | **counts)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)** |
| | | **Notice of forfeiture** |

### I N F O R M A T I O N

### COUNTS ONE THROUGH EIGHT

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to the information:

1.     Defendant RICHARD IRA MINTZ was a doctor of osteopathic medicine ("D.O.") licensed by the Commonwealth of Pennsylvania to practice medicine and was registered and authorized by the U.S. Drug Enforcement Administration (DEA) to write prescriptions for controlled substances for legitimate medical purposes within the scope of his professional medical practice.

2.     A medical practice, referred to as "Medical Practice 1," was a corporation organized under the laws of the Commonwealth of Pennsylvania doing business in Philadelphia, Pennsylvania, where defendant RICHARD IRA MINTZ practiced as a physician.

3.     The Controlled Substances Act governs the manufacture, distribution, and dispensing of controlled substances in the United States.  Under the Controlled Substances Act, there are five schedules of controlled substances – Schedules I, II, III, IV, and V.  Controlled substances are scheduled into these levels based upon their potential for abuse or dependence,

1

among other things.  Schedule I contains the most dangerous drugs that have the highest

potential for abuse or dependence, and Schedule V contains the least dangerous controlled

substances.  Abuse of Schedule II controlled substances may lead to severe psychological or

physical dependence.

4.       Oxycodone is a narcotic analgesic that is similar to morphine and is

classified as a Schedule II controlled substance, sometimes prescribed under the brand name

OxyContin.  Oxycodone is used to treat severe pain, and, even if taken only in prescribed

amounts, can cause physical and psychological dependence when taken for a long time.

Oxycodone is used in pain relief drugs in varying strengths, including 5, 10, 30, 40, 60, and 80

milligram amounts.  These are often referred to as oxycodone 5, oxycodone 10, oxycodone 30,

oxycodone 40, oxycodone 60, and oxycodone 80.  Even if taken only in prescribed amounts,

pills containing amounts as low as 5 milligrams of oxycodone can cause physical and

psychological dependence when taken for a long time.  Users who abuse pills containing

oxycodone frequently do so by smoking, chewing, dissolving, injecting, and crushing the pills

and snorting the substance.

5.       Title 21, United States Code, Section 841(a)(1), provides that "[e]xcept as

authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally . .

. manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or

dispense, a controlled substance."

6.       Title 21, United States Code, Section 802(11), provides that the term

"distribute" means to deliver (other than by administering or dispensing) a controlled substance.

7.       Title 21, United States Code, Section 821, provides that "[t]he Attorney

General [of the United States] is authorized to promulgate rules and regulations relating to the

2

registration and control of the manufacture, distribution and dispensing of controlled substances. The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides, among other things, that a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

8.     The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances.  Chapter 16.92 provides in pertinent part:

> (a) A person licensed to practice medicine and surgery in this Commonwealth or otherwise licensed or regulated by the Board, when prescribing, administering or dispensing controlled substances, shall carry out, or cause to be carried out, the following minimum standards:
>
> (1)     Initial medical history and physical examination . . . . [B]efore commencing treatment that involves prescribing, administering or dispensing a controlled substance, an initial medical history shall be taken and an initial examination shall be conducted unless emergency circumstances justify otherwise.  Alternatively, medical history and physical examination information recorded by another health care provider may be considered if the medical history was taken and the physical examination was conducted within the immediately preceding thirty days.  The physical examination shall include an evaluation of

the heart, lungs, blood pressure and body functions that relate to the patient's specific complaint.

(2)     Reevaluations.  Among the factors to be considered in determining the number and the frequency of follow-up evaluations that should be recommended to the patient are the condition diagnosed, the controlled substance involved, expected results and possible side effects.  For chronic conditions, periodic follow-up evaluations shall be recommended to monitor the effectiveness of the controlled substance in achieving the intended results.

(3)     Patient counseling.  Appropriate counseling shall be given to the patient regarding the condition diagnosed and the controlled substance prescribed, administered or dispensed.  Unless the patient is in an inpatient care setting, the patient shall be specifically counseled about dosage levels, instructions for use, frequency and duration of use and possible side effects.

(4)     Medical Records.  [C]ertain information shall be recorded in the patient's medical record on each occasion when a controlled substance is prescribed, administered or dispensed.  This information shall include the name of the controlled substance, its strength, the quantity and the date it was prescribed, administered or dispensed to a patient.  The medical record shall also include a specification of the symptoms observed and reported, the diagnosis of the condition for which the controlled substance is being given and the directions given to the patient for the use of the controlled substance.  If the same controlled substance continues to be prescribed, administered or dispensed, the medical record shall reflect changes in the symptoms observed and reported, in the diagnosis of the condition for which the controlled substance is being given and in the directions given to the patient.

9.     Defendant RICHARD IRA MINTZ sold medically unnecessary prescriptions for oxycodone out of Medical Practice 1 to Person 1, who is known to the United States Attorney.  In exchange for approximately $120 cash per patient, Person 1 obtained medically unnecessary prescriptions from defendant MINTZ for 120 oxycodone 30 mg pills.  As directed by Person 1, defendant MINTZ would write the medically unnecessary oxycodone prescriptions in the name of third parties who were not present at Medical Practice 1 and whom defendant MINTZ had never met.

4

10.     On or about the dates below, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### RICHARD IRA MINTZ

knowingly and intentionally distributed and dispensed, outside the course of professional practice and not for a legitimate medical purpose, and aided and abetted the distribution and dispensing of, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, to Person 1, with each distribution and dispensing constituting a separate count:

| COUNT | APPROXIMATE DATE OF DISTRIBUTION | QUANTITY |
|---|---|---|
| 1 | July 22, 2016 | 120 oxycodone 30 mg. pills |
| 2 | August 19, 2016 | 120 oxycodone 30 mg. pills |
| 3 | April 2, 2018 | 120 oxycodone 30 mg. pills |
| 4 | April  4, 2018 | 120 oxycodone 30 mg. pills |
| 5 | April 27, 2018 | 120 oxycodone 30 mg. pills |
| 6 | June 4, 2018 | 120 oxycodone 30 mg. pills |
| 7 | July 10, 2018 | 120 oxycodone 30 mg. pills |
| 8 | July 10, 2018 | 120 oxycodone 30 mg. pills |

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## **NOTICE OF FORFEITURE**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

       1.     As a result of the violations of Title 21, United States Code, Section 841, set forth in this information, defendant

### **RICHARD IRA MINTZ, D.O.**

shall forfeit to the United States of America:

       (a)     any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations; and

       (b)     any property constituting, or derived from, proceeds obtained, directly or indirectly, from the commission of such violations, including but not limited to, a sum of money equal to at least $960 in United States currency, representing the amount of proceeds obtained as a result of the violations of the Controlled Substances Act.

       2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

       (a)     cannot be located upon the exercise of due diligence;

       (b)     has been transferred or sold to, or deposited with, a third party;

       (c)     has been placed beyond the jurisdiction of the Court;

       (d)     has been substantially diminished in value; or

       (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

6

All pursuant to Title 21, United States Code, Section 853.


*Denise Wolf for*

WILLIAM M. MCSWAIN
United States Attorney
Eastern District of Pennsylvania

ROBERT ZINK
Acting Chief
Criminal Division, Fraud Section